

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2001

# Virgin Islands v. Martinez

Precedential or Non-Precedential:

Docket 98-7331

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Virgin Islands v. Martinez" (2001). *2001 Decisions.* Paper 20.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/20

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 2, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7331

GOVERNMENT OF THE VIRGIN ISLANDS,

v.

WILHELM MARTINEZ

      Appellant

On Appeal from the District Court
of the Virgin Islands, Division of St. Croix
D.C. Crim. No. 93-183
District Judge: Honorable Raymond L. Finch

Submitted under Third Circuit LAR 34.1(a)
December 7, 2000

BEFORE: MANSMANN, ALITO and GREENBERG,
Circuit Judges

(Filed: February 2, 2001)

       James A. Hurd, Jr.
       United States Attorney
       David L. Atkinson
       Assistant United States Attorney
       Office of U.S. Attorney
       5500 Veterans Drive Room 260
       St. Thomas, Virgin Islands
        00802-6424

       Attorneys for Appellee

          Thurston T. McKelvin
          Federal Public Defender
          Patricia Schrader-Cooke
          Assistant Federal Public Defender
          P.O. Box 3450, Christiansted,
          St. Croix, USVI 00822

           Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on an appeal from
an order of the District Court of the Virgin Islands revoking
appellant Wilhelm Martinez's probation and sentencing him
to custodial terms. Martinez had served consecutive six-
month terms of custodial confinement for assault in the
third degree and burglary in the third degree and was on
probation when the district court revoked his probation
because, before it revoked his probation, he had violated
certain of its terms and conditions. We will reverse the
order of the district court because it had imposed a "split
sentence," i.e., a sentence in which at least a portion of the
custodial term is suspended and probation is imposed,
without suspending any portion of the sentence. We,
however, will give the district court the opportunity to
correct its sentence. If the district court corrects the
sentence by imposing a legal split sentence, the
reimposition of a custodial sentence for the probation
violation shall be upheld unless Martinez advances a valid
objection to the revocation and reimposition of sentence on
grounds we do not address. If the district court does not
impose a lawful split sentence, the imposition of probation
and thus the sentence for its violation shall be vacated.

I. BACKGROUND

On November 9, 1993, the United States Attorney filed an
information in the District Court of the Virgin Islands
charging Martinez with rape in the first degree in violation
of V.I. Code Ann. tit. 14, S 1701(2), Count I; burglary in the

first degree in violation of V.I. Code Ann. tit. 14, S 442(4), Count II; unlawful sexual contact in the first degree in violation of V.I. Code Ann. tit. 14, S 1708(1), Count III; and burglary in the third degree in violation of V.I. Code Ann. tit. 14, S 444(1), Count IV. Martinez entered into a plea agreement pursuant to which he entered guilty pleas on April 29, 1994, to Counts III and IV, assault in the third degree (including unlawful sexual contact) in violation of V.I. Code Ann. tit. 14, S 297, as a lesser included offense to the charge of unlawful sexual contact in thefirst degree, and burglary in the third degree in violation of V.I. Code Ann. tit. 14, S 441(1). The district court orally sentenced Martinez on September 14, 1994, to two years incar ceration on Count III and two years incarceration on Count IV to run concurrently with each other followed by concurrent five-year terms of probation.

Martinez filed a motion for correction of sentence on September 21, 1994, asserting that the district court had imposed an illegal sentence. Martinez argued that according to V.I. Code Ann. tit. 5, S 3711(a), a"split sentence" can require incarceration up to a maximum of six months followed by probationary supervision pursuant to a judgment of suspended sentence. He also argued that, according to the case law, any sentence that includes a period of probation without first including a provision suspending a portion of the sentence is illegal and therefore should be invalidated or corrected.

The government filed its response to Martinez's motion on October 13, 1994, simply stating that the sentence imposed was proper. Apparently in r esponse to Martinez's motion, the district court on November 19, 1994,filed a judgment and commitment effectively reducing Martinez's sentence to six months on Count III and six months on Count IV, to be served consecutively, followed by two and one half years probation on each of the two counts, also to be served consecutively. As a condition of pr obation, the court required Martinez to remain drug free and to obtain psychiatric counseling. The court, however, did not suspend any period of incarceration imposed on either count. Accordingly, this modified sentence, though obviously advantageous to Martinez, did not correct the error in the

original sentence that he had identified in his motion to correct sentence. Martinez did not appeal fr om this judgment.

Martinez subsequently completed service of the six-month terms of incarceration and thus began supervised probation. Unfortunately, the probation was not uneventful for on May 16, 1996, the probation departmentfiled a petition for revocation of probation alleging that Martinez left the jurisdiction without permission and had enrolled in the Love Ministries Program in New York. On February 6, 1997, Martinez was arrested in New York for the probation violation and thereafter was retur ned to St. Croix and was detained. At a hearing on the petition for r evocation of probation on April 17, 1997, the court or dered that Martinez be detained until his placement in a drug treatment center. In conformity with that order, on April 22, 1997, Martinez was placed in The Village South Rehabilitation Center in Miami, Florida, wher e he completed residential treatment on July 7, 1997, following which he returned to St. Croix for placement in a half-way house. However, Martinez had problems adjusting to the half-way house and on September 16, 1997, was r eturned to residential treatment. Although he was directed to take medication, he refused to do so.

On November 13, 1997, the probation departmentfiled another petition for revocation of probation, alleging that Martinez engaged in inappropriate behavior and refused to take his prescribed medication. On November 17, 1997, the district court conducted a hearing on the petition at which Martinez requested psychological testing. Martinez was detained and received a psychological evaluation dated February 2, 1998, performed by L. Thomas Kucharki, Ph.D., Chief Psychologist at the Metropolitan Correction Center in New York. Kucharki stated that, in his opinion, Martinez does not suffer from a mental illness or mental defect but has a long history of substance abuse and dependence. Although Kucharki recognized that Martinez has a strong psychopathic style and qualifies for a diagnosis of having an antisocial personality disor der, he indicated that substance abuse and an antisocial personality disorder do not qualify as mental illnesses or

4

mental defects within the meaning of the law. Indeed, according to Kucharki, Martinez exhibited signs of malingering and "feigning" mental illness. Kucharki recommended that Martinez be admitted into a r esidential drug abuse treatment program if he was sentenced to incarceration.

After Kucharki completed the evaluation, the district court conducted a hearing on May 4, 1998, on the petition charging violation of the terms and conditions of probation. The court held that Martinez had violated the ter ms and conditions of his probation and thus deter mined that it should revoke his probation. After initially entering an order imposing two consecutive six-month custodial terms, the court entered an amended order on May 22, 1998, sentencing Martinez to 30-month custodial ter ms on Count III and Count IV to be served consecutively. In r esponse, Martinez filed a timely notice of appeal to this court and sent two letters in the district court which it tr eated as a timely motion for reconsideration. He then moved in this court to stay his appeal and remand the case to the district court. We granted that motion on January 4, 1999, and thus we remanded the case to the district court.

The district court ordered a second psychological evaluation on October 27, 1998, which was completed and filed on September 8, 1999. In that evaluation, Dr . Olaf Hendricks found Martinez to be free of psychopathology but stated that as a chronic substance abuser Martinez is manipulative. In Hendricks' opinion, Martinez was not dangerous, and his "occasional behavioral pr oblems are directly related to his addictive dynamics." App. at 84. On October 6, 1999, the district court held a hearing on Martinez's motion for reconsideration and denied the motion, a determination which it formalized in an order of October 27, 1999.

Thereafter, on June 12, 2000, we filed an order vacating the stay of Martinez's appeal. The issues that we now address are (1) whether the district court erred in sentencing Martinez to incarceration for violation of the terms of probation where the "split" sentencing order did not explicitly suspend the execution of a portion of the sentence as contemplated by V.I. Code Ann. tit. 5, S 3711,

and where Martinez served the custodial sentence imposed; (2) If the district court imposed an illegal sentence, whether we should remand the case for it to resentence Martinez pursuant to V.I. R. Crim. P. 35.1(a) or whether we should vacate the sentence; and (3) whether the district court abused its discretion in revoking Martinez's probation and sentencing him to incarceration inasmuch as the custodial facility in which he was to be confined did not have appropriate mental health services.

II. DISCUSSION

A. Jurisdiction

The district court had jurisdiction under the Revised Organic Act, 48 U.S.C. S 1612, and under V.I. Code Ann. tit. 4 S 32, and we have jurisdiction under 18 U.S.C. S 3742 and 28 U.S.C. S 1291. To the extent that this appeal involves the application of legal principles we exer cise plenary review, see United States v. Stewart, 185 F.3d 112, 123 n.4 (3d Cir.), cert. denied , 528 U.S. 1063, 120 S.Ct. 618 (1999), but insofar as the appeal involves the revocation of probation we review the district court's order on an abuse of discretion basis. See Bur ns v. United States, 287 U.S. 216, 222, 53 S.Ct. 154, 156 (1932); United States v. D'Amato, 429 F.2d 1284, 1286 (3d Cir . 1970).

B. The Split Sentence

We are satisfied that the district court erred both in imposing its original sentence and in sentencing Martinez in response to his motion to correct sentence inasmuch as it did not on either occasion explicitly suspend the execution of a portion of the sentence. Although some courts of appeals have held that suspension of a portion of a sentence can be implied in a split sentence not stating specifically that the court has suspended a portion of the sentence, we have held that a split sentence that imposes probation without suspending a portion of the sentence is illegal. See United States v. Guevremont , 829 F.2d 423, 427 (3d Cir. 1987); United States v. Stupak , 362 F.2d 933, 934 (3d Cir. 1966) ("The court may not r equire a defendant to submit to probationary supervision unless the execution of part of his prison term is suspended . . . . Absent such a

6

suspension the authority of the court over the defendant
during the period of probation is lacking . . ... The
probation order was therefore invalid.").

Our holdings, though rendered on appeal fr om
prosecutions in United States district courts under federal
law prior to the enactment of the Sentencing Refor m Act of
1984 rather than on appeal from prosecutions in the
District Court of the Virgin Islands under Virgin Islands
law, are consistent with V.I. Code Ann. tit. 5, S 3711 which
provides:

> Upon entering a judgment of conviction of any of fense
> against the laws of the Virgin Islands not punishable
> by life imprisonment, the district court or a territorial
> court, when satisfied that the ends of justice and the
> best interest of the public as well as the defendant will
> be served thereby, may suspend the imposition or
> execution of sentence and place the defendant on
> probation for such period and upon such ter ms and
> conditions as the court deems best.

Section 3711 further provides that when the maximum
punishment exceeds six months for a particular of fense,
the court may impose a sentence in excess of six months
but provide that the defendant remain in confinement for a
period not exceeding six months with the execution of the
remainder of the sentence suspended and the defendant
placed on probation for such period and upon such terms
and conditions as the court deems best.1

_____

1. We note that section 3711 is very similar to 18 U.S.C. S 3651, which
Congress repealed effective in 1987. 18 U.S.C. S 3651 provided: "Upon
entering a judgment of conviction of any offense not punishable by death
or life imprisonment, any court having jurisdiction to try offenses
against
the United States . . . may suspend the imposition or execution of
sentence and place the defendant on probation for such period and upon
such terms and conditions as the court deems best." This "split-
sentence" provision of 18 U.S.C. S 3651 was the "sole source of the
district courts' power to suspend the execution of sentences; a federal
court has no inherent power to suspend sentences or place defendants
upon probation." United States v. Cohen , 617 F.2d 56, 58 (3d Cir. 1980);
see also United States v. Atlantic Richfield Co. , 465 F.2d 58, 60 (7th
Cir.
1972). Of course, the repeal of 18 U.S.C. S 3651 had no effect on section

7

Nevertheless, even in the absence of a written judgment reflecting that the court is suspending a part of the sentence, if the district court orally states when imposing sentence that it is suspending part of the sentence, the oral sentence takes precedence over the judgment. See United States v. Raftis, 427 F.2d 1145, 1146 (8th Cir. 1970); see also United States v. Chasmer, 952 F.2d 50, 52 (3d Cir. 1991). Here, however, there is nothing in the record suggesting that the district court orally suspended part of Martinez's sentence and the judgment was silent on the point.

Yet the absence of either a judgment or an oral direction for the suspension of sentence is not necessarily fatal to the validity of a split sentence for courts of appeals have held that even if the district court does not state specifically that it is suspending a portion of the sentence when imposing a split sentence, it impliedly may have done so. For example, in United States v. Makres, 851 F .2d 1016, 1017 (7th Cir. 1988), Makres appealed from an order revoking his probation, contending that the district court failed to state specifically that it was suspending a portion of the sentence in which it imposed probation. The court of appeals held that the district court did not abuse its discr etion in resentencing Makres for violation of pr obation because it was implicit in the district court's judgment that it was suspending sentence. Id. at 1018, citing Raftis, 427 F.2d at 1146. The court of appeals reasoned that suspension and probation "go hand in hand" and the imposition of one without the other is illegal. Moreover, the court indicated that it is not likely that a district court ever intends to impose an illegal sentence. See Makres , 851 F.2d at 1019. Furthermore, the court reasoned that the typical defendant violating the terms and conditions of pr obation would not anticipate that the penalty merely would be a r equirement
_____

3711 which remains operative. The Sentencing Reform Act of 1984, 18 U.S.C. S 3561, however, changed the sentencing landscape for it "provides for the imposition of a sentence of probation." U.S.S.G. S 5B1.1 cmt. background (2000). Thus, even though split sentences have been abolished in the district courts in prosecutions under federal law, in an appropriate case a district court may impose a sentence of probation.

for completion of the probation. Id. W e also point out that the "carrot" and "stick" appr oach to probation is based on the theory that rehabilitation without confinement is possible only if the court has a continuing power to impose punishment for the original offense if the defendant violates probation. See Roberts v. United States, 320 U.S. 264, 272, 64 S.Ct. 113, 117 (1943).

McHugh v. United States, 230 F.2d 252, 255 (1st Cir. 1956), is similar to Makres as in McHugh the court held that although it is desirable that a district court expressly suspend part of a sentence when imposing a split sentence, it is not absolutely essential that it do so and that at times it can be inferred that the court suspended sentence. In that regard the court reasoned that 18 U.S.C. S 3651, repealed as of 1987, which provided for suspension of sentence and imposition of a term of pr obation, did not require an express suspension of imprisonment. The court believed that this omission supported its view that it is possible for a district court to imply that it is suspending sentence. Id. See also Raftis, 427 F .2d at 1146 ("[T]he intent to suspend the sentence flows from the language used in the verbal pronouncement of the sentence and . . . impreciseness of language will not negate the court's obvious intent.").

However, we have not followed the cases suggesting that a court may suspend a sentence by implication. In Guevremont, 829 F.2d at 423-24, we held that a modified sentencing order which imposed a sentence of pr obation but did not specifically suspend a part of the sentence was illegal but the court could correct it under Fed. R. Crim. P. 35(a). Similarly, in Stupak, 362 F.2d at 934, we held that a two-year period of probation, later reduced to eight months, imposed without a suspended sentence was illegal.

Here, because there is no evidence that the district court explicitly stated that it was suspending the sentences it imposed either originally or on Martinez's motion for correction of sentence, the sentences wer e illegal under V.I. Code Ann. tit. 5, S 3711(a). Thus, we cannot affirm the order sentencing Martinez for violation of pr obation as the district court did not impose a valid probationary term.

9

C. Remanding for Resentencing

Our conclusion that the district court erroneously
sentenced Martinez for violation of probation does not end
our inquiry. Virgin Islands Rule of Criminal Procedure 35.1
provides that the "court may correct an illegal sentence
imposed pursuant to Virgin Islands law at any time and
may correct a sentence imposed in an illegal manner within
the time provided herein for the r eduction of sentence."2
The sentence in Guevremont is an example of an illegal
sentence rather than a sentence imposed in an illegal
manner for in that case "the court imposed pr obation
without suspend[ing] sentence [and thus] the probation
exceeded the statutory limits."3 Guevremont, 829 F.2d at
427. As an illegal sentence, therefore, it could be corrected
at any time by the district court under the version of Fed.
R. Crim. P. 35(a) in effect prior to 1987. Id.

Here, as in Guevremont, the sentence was illegal because
the court imposed a term of probation without suspending
at least a portion of the sentence as requir ed by V.I. Code

_____

2. V.I. R. Crim. P. 35.1 is very similar to Fed. R. Crim. P. 35(a) as it read
before it was amended and as it still applies to offenses committed before
November 1, 1987. That version of Rule 35(a) pr ovided that the court
may correct an illegal sentence at any time. Under the current Fed. R.
Crim. P. 35(a), the court "shall corr ect a sentence that is determined on
appeal under 18 U.S.C. S 3742 to have been imposed in violation of law,
to have been imposed as a result of an incorr ect application of the
sentencing guidelines, or to be unreasonable, upon remand of the case
to the court-- (1) for imposition of a sentence in accord with the findings
of the court of appeals; or (2) for further sentencing proceedings if, after
such proceedings, the court determines that the original sentence was
correct."

3. "[I]llegal sentences are essentially only those which exceed the relevant
statutory maximum limits or violate double jeopar dy or are ambiguous
or internally contradictory. Sentences imposed in an illegal manner are
within the relevant statutory limits but ar e imposed in a way which
violates defendant's right, under Rule 32, to be addressed personally at
sentencing and to speak in mitigation of punishment, or his statutory
right to be asked about his prior convictions in a proceeding to impose
an enhanced sentence in a narcotics conviction, or his right to be
sentenced by a judge relying on accurate infor mation or considerations
solely in the record . . . ." Guevremont, 829 F.2d at 427, quoting 8AJ.
Moore, Moore's Federal Practice P 35.03[2] (2d ed. 1987).

Ann. tit. 5 S 3711(a). Therefore, under V.I. R. Crim. P. 35.1, the district court may correct the sentence at any time, even now. We therefore will r emand the matter to the district court to give it the opportunity to corr ect the sentence it imposed in its judgment of November 19, 1994.

There are, of course, two ways that the court can correct the sentence. First, the court could impose a split sentence including both a custodial and probationary ter m with the custodial portion partially suspended. Second, the court could cure the sentencing error by vacating the provision for probation.

If the court on remand contemplates imposing a split sentence with a portion of the custodial ter m suspended, it should consider certain issues before doing so including its sentencing plan when it sentenced Martinez originally and on his motion to correct his sentence. In Guevremont we concluded that there were no constitutional or other inhibitions restricting the correction of the sentence because the possibility of judicial vindictiveness was low. See Guevremont, 829 F.2d at 424. Moreover, we explained that "(1) [T]he sentencing judge's intentions were made clear, (2) the correction simply makes the sentence conform to the sentencing judge's original and inter dependent sentencing plan, and (3) Guevremont was neither surprised nor prejudiced by the change in his sentence, for he had induced the court to reduce the sentence by his promise of restitution." Id. Here, however , we are not aware of any evidence that the district court expressly stated its intentions either when it originally sentenced Martinez or subsequently imposed the modified sentence in r esponse to Martinez's motion to correct his sentence.

But even if the court did not state specifically that it was suspending the sentence, the fact that it reduced the sentence after Martinez filed his motion to corr ect the sentence could have made Martinez aware that the court's intention was to suspend part of the sentence, specifically the portion of the custodial term imposed originally but eliminated after Martinez made his motion to corr ect the sentence. Thus, we believe that even at this late date it would not be unfair for the court to impose a legal split sentence on Martinez. See Guevremont, 829 F.2d at 428

11

(allowing probation order to be vacated or allowing a defendant to avoid consequences of violating pr obation would thwart the intent of the court's sentencing plan). Furthermore, it is difficult to understand how Martinez would be prejudiced by the district court's delay in imposing a legal split sentence, as he reasonably should have expected that he would suffer negative consequences if he violated the terms and conditions of his probation even if the court did not impose a legal split sentence. In this regard, we point out that we har dly would take seriously any suggestion that a defendant on pr obation might violate terms and conditions of the pr obation that he otherwise would have obeyed on the theory that a court later would invalidate the probationary ter m.

Of course, as we have indicated, the court may corr ect the sentence by vacating the portion of it pr oviding for probation. See Stupak, 362 F.2d at 934. We, however, doubt that it should do so. As we explained in Guevremont, in Stupak it was appropriate to vacate the probation order because there was no indication of the ter m of imprisonment the court originally intended to impose and suspend. See Guevremont, 829 F .2d at 429. In Guevremont, however, there was an original sentence followed by a correction (a reduced sentence), and the court's intent was clear. Id.

We reiterate that the court originally imposed a sentence of two years of incarceration on each count (to run concurrently) and five years probation for each count (to run concurrently) on September 14, 1994. Martinez then filed his motion to correct the sentence on September 21, 1994, arguing that the sentence imposed violated the maximum incarceration time as provided by V.I. Code Ann. tit. 5, S 3711(a) and that part of the sentence should be suspended according to Stupak. After that, the court imposed a reduced custodial sentence of six months on each count to be served consecutively as well as two and a half years of probation on each count to be served consecutively, thus complying with V.I. Code Ann. tit. 5, S 3711, which limits the custodial time that may be required to six months when a split sentence is imposed. In the circumstances it would seem to be unjustifiable for

12

Martinez to receive the benefit of having his custodial term greatly reduced without suffering the burden of being placed on probation.4

D. Revocation of probation

Finally we reach the question of whether the district court properly revoked Martinez's pr obation, as this issue will be germane if the district court on r emand imposes a valid split sentence. Applying an abuse of discr etion standard of review, we are satisfied that the district court did not err in revoking Martinez's probation and sentencing him to periods of incarceration.5  In this regard we observe that to revoke probation the district court needs to be only reasonably satisfied that the defendant has violated its terms and conditions. See D'Amato, 429 F.2d at 1286.

_____

4. Our disposition does not deprive Martinez fr om arguing on the remand that the court should not impose a split sentence with a portion suspended because to do so would violate any principle of law that we have not addressed including double jeopar dy principles. See, however, Baker v. Barbo, 177 F.3d 149, 157–59 (3d Cir. 1999); Guevremont, 829 F.2d at 428 ("We believe that the cases mentioned above support the view that . . . the district court's order corr ecting the illegal sentence was
appropriate and does not bring to bear double jeopardy concerns of possible judicial vindictiveness."); United States v. Allen, 588 F.2d 183, 185 (5th Cir. 1979) ("When a court discovers that it has entered a sentence that does not conform to applicable statutes, it has a duty to correct the sentence even though service of the sentence first imposed has begun. This is true even if the correct sentence may be more onerous."); United States v. Clayton, 588 F.2d 1288, 1291 (9th Cir. 1979) (The court's sentence correcting a prior illegal sentence did not violate Fifth Amendment double jeopardy protection even though it was more severe than the original sentence because the r ecord showed that the more severe sentence was imposed because of appellant's conduct in failing to obey the court's order). See also United States v. Goggins, 99 F.3d 116, 118 (3d 1996) (for double jeopar dy purposes, "if a conviction of one count of a multi-count indictment is vacated on appeal, on remand the district court may resentence the defendant to an increased sentence on the remaining counts so long as the total reimposed sentence does not exceed the original sentence.") (emphasis added).

5. While we are conditionally upholding the order revoking probation and the sentence the court imposed, we are not pr ecluding the district court from imposing a different sentence on remand.

13

Martinez argues that revocation pr oceedings are subject
to due process requirements because they result in a loss
of liberty, see Gagnon v. Scarpelli, 411 U.S. 778, 782, 93
S.Ct. 1756, 1760 (1973); United States v. Bar nhart, 980
F.2d 219, 222 (3d Cir. 1992), and that implicit in due
process rights is that prisoners receive treatment for their
illnesses during their period of incarceration. See Inmates
of Allegheny County Jail v. Pierce, 612 F .2d 754, 762-63 (3d
Cir. 1979). At the hearing on revocation of probation, the
court recommended at Martinez's request that he receive
psychiatric counseling during his incarceration. The court
nevertheless stated during the hearing: "I r ealize that the
facilities locally are [nonexistent] for counseling." App. at
54-55. Martinez argues that inmates with serious mental
illnesses are entitled to be diagnosed and tr eated by
qualified professionals and that failur e of a penal
institution to do so violates the Due Process Clause. See
Inmates of Allegheny County Jail, 612 F.2d at 763.
Therefore, Martinez argues that he should have been
continued on probation, given a more stringent probation,
or sentenced to a shortened incarceration period rather
than being sentenced to incarceration wher e treatment for
mental illnesses may not be available.

In Estelle v. Gamble, 429 U.S. 97, 102-05, 97 S.Ct. 285,
290-91 (1976), the Court held that the Eighth Amendment
prohibits the government from being deliberately indifferent
to a prisoner's serious medical needs, and that the
government has an obligation to provide medical care for
people being punished by incarceration. In Inmates of
Allegheny County Jail, 612 F.2d at 763, we held, inter alia,
that a remand was required to deter mine whether the level
of psychiatric care at the prison met the constitutional
requirement that inmates with serious mental or emotional
illnesses be provided reasonable access to medical
personnel qualified to diagnose and treat such illnesses. We
indicated that "[a]lthough negligence in the administration
of medical treatment to prisoners is not itself actionable
under the Constitution, failure to provide adequate
treatment is a violation of the eighth amendment when it
results from `deliberate indiffer ence to a prisoner's serious
illness or injury.' " Id. at 762, quoting Estelle, 429 U.S. at
105, 97 S.Ct. at 291.

14

The two-pronged Estelle test for a cognizable claim under a civil rights statute because of inadequate medical care in prison requires that there be deliberate indifference on the part of prison officials and that the prisoner's medical needs be serious. See Estelle, 429 U.S. at 106, 97 S.Ct. at 290-91. Thus, we held in Inmates of Allegheny County Jail that when inmates with serious mental illnesses effectively are prevented from being diagnosed and treated by qualified professionals, there has been a due process violation. See Inmates of Allegheny County Jail, 612 F.2d at 763; see also Tillery v. Owens, 907 F.2d 418, 425-26 (3d Cir. 1990); Hassine v. Jeffes, 846 F.2d 169, 175 (3d Cir. 1988).

From the record here, however, it does not appear that Martinez has a serious medical illness, one of the two requirements of the Estelle standard. After all, the evaluations to which we already have referred concluded that Martinez did not have a serious mental illness. Furthermore, even if he had a serious mental illness, we would be reluctant to allow him to avoid a sentence of incarceration which, in the absence of the illness, would be appropriate. Rather, we think that if he had such an illness his remedy if his needs were not met would be in a civil action seeking the treatment.

Laying aside Martinez's claim for treatment, which as we have indicated will not inform our result on the revocation of probation issue, we find that the district court's disposition was appropriate. In this regard, the record shows that Martinez violated the terms of his probation more than one time. After leaving the Virgin Islands and failing to report to his probation officer, he was apprehended in New York. The district court disposed of those violations by ordering that he complete residential and outpatient treatment programs. However, Martinez threatened harm to other patients and also made inappropriate sexual advances towards patients and staff even though the evaluations by mental health professionals indicated that he did not suffer from mental illness. Plainly, it is entirely appropriate that Martinez be punished and in the circumstances the district court clearly did not abuse its discretion when it revoked Martinez's probation and sentenced him to a period of incarceration.

15

III. CONCLUSION

For the foregoing reasons, we will r everse the order of the district court and remand the case to that court for further proceedings. On the remand the district court should correct the illegal sentence by imposing a legal split sentence or by vacating the provision for ter ms of probation. Of course, if the court vacates the provision for probation, then it should vacate the finding that Martinez violated the terms and conditions of pr obation as well as the sentence imposed for the violation. If the court imposes a split sentence, it again may revoke Martinez's probation and reinstate the sentence it imposed on Martinez for violating probation. Our disposition is without prejudice to Martinez advancing any argument on remand that we have not addressed as to why the court should not impose a split sentence.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit